UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jerusalem K. Monday,
     Plaintiff

     v.                                    Civil No. 07-cv-226-SM
                                              Opinion No. 2008 DNH 189
John E. Potter, Postmaster
General, United States
Postal Service,
     Defendant

### O R D E R

Pro se plaintiff Jerusalem Monday claims that his former
employer, the United States Postal Service ("USPS"), fired him
because of his race or national origin, in violation of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.
("Title VII").  Before the court is defendant's motion for
summary judgment.  Plaintiff objects.  For the reasons given,
defendant's motion for summary judgment is granted.

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law."  FED. R. CIV. P.
56(c).  To defeat a motion for summary judgment, "the non-moving
party 'must set forth specific facts showing that a genuine issue
of material fact exists as to each issue upon which [he] would

bear the ultimate burden of proof at trial.'" Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)).  To make that showing, "the non-moving party may not rest merely upon the allegations or denials in its pleading." Id. (citation omitted).  When ruling on a party's motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See id. (citing Rodríguez v. SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

## Background

The court notes at the outset that, contrary to Local Rule 7.2(b)(2), plaintiff has not incorporated into his memorandum "a short and concise statement of material facts, supported by appropriate record citations."  Accordingly, "[a]ll properly supported material facts set forth in [defendant]'s factual statement [are] deemed admitted."  Id.; cf. Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) ("This court has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party fails to file oppositions in compliance with local rules.") (quoting Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003)).  Moreover, plaintiff has

2

produced neither affidavits nor any admissible evidence in
opposition; he merely makes unsupported factual allegations in
his unsworn reply brief.  Thus, the factual background set out
below is drawn from defendant's properly supported factual
statement and other undisputed evidence submitted.

Monday is African and of Nigerian descent.[1]  The USPS hired
him in September, 2004, as a casual employee, to work in its
Nashua, New Hampshire Logistics and Distribution Center
("Center").  Monday was typically supervised by Michael Carney,
who reported to David Keane, in turn, who reported to Timothy
O'Connor.

On August 10, 2005, Monday was assigned to work in "the
flats," a work area where large flat envelopes are sorted for
delivery.  After reporting to the flats, Monday spent
approximately thirty minutes staring at a female employee, Amy
Johnson.

Monday's behavior made Johnson uncomfortable, and she
reported it to her supervisor, Faith Luhtala.  Luhtala also

---

[1] While plaintiff identifies himself as African American in
his pleadings, he testified in an Equal Employment Opportunity
Commission hearing in this case that his nationality is Nigerian
and that he has a green card, which suggests that, as a resident
alien, he is African, not African American.

observed Monday staring at Johnson.  After seeing it for herself,
Luhtala reported Monday's behavior to Keane.  Later, Johnson
discussed the incident with Keane.  Keane asked her to put her
complaint against Monday in writing.  She did so.  She also told
Keane that she would be satisfied if management instructed Monday
to stay away from her at all times.  Keane then told Carney to
instruct Monday to stay away from Johnson and to stay out of the
flats.  Carney spoke with Monday about Johnson's complaint.  In
response, Monday told Carney that he would stay away from
Johnson.  Carney, in turn, told Keane that he had directed Monday
to stay out of the flats and away from Johnson, and that Monday
had agreed to do so.

Five days later, Monday came up behind Johnson in a narrow
corridor, so that when she turned around, the two were face-to-
face.  Johnson again complained to Keane, who asked her to put
her complaint in writing.  She did so.  Keane promised to make
sure that Monday stayed out of the flats.

Several days later, after learning that Monday had been
assigned to work in the flats, Keane spoke with Monday.  Keane
told Monday that his assignment to the flats had been a mistake,
that he was not to work in the flats, and that if any supervisor

assigned him to the flats, he should tell the supervisor to contact Keane.

On October 17, Johnson spotted Monday in the flats, which she reported to Keane.  Keane and another supervisor confronted Monday, who explained that he had been in the flats to retrieve a cell phone from a co-worker.  Keane reminded Monday that he was not allowed in the flats, and sent him home for the rest of his shift.  Keane then contacted his superior, O'Connor, and recommended that Monday be fired.  O'Connor agreed.  In a letter dated October 19, O'Connor terminated Monday's employment, explaining that Monday's firing was due to his failure to follow instructions.

In his objection to summary judgment Monday states, without citation to the record, that he was never prohibited from passing through the flats.  Notwithstanding plaintiff's failure to support that assertion, partial support may be found in a deposition taken from him in a proceeding before the United States Equal Employment Opportunity Commission and submitted by defendant in support of his summary judgment motion.  In that deposition, Monday testified that Carney never told him to stay away from Johnson or to stay out of the flats.  On the other hand, there is no evidence to refute defendant's evidence that

5

Keane also told plaintiff he was not allowed to go into the flats.

## Discussion

Monday claims that defendant discriminated against him because of his race or national origin by firing him.  Defendant argues that Monday's discrimination claim fails as a matter of law because the undisputed factual record demonstrates that he was fired for a legitimate non-discriminatory reason, i.e., going into the flats after he had been told to stay out of that area and promised to do so.  Without record support, Monday argues that his firing was pretextual because: (1) the USPS conducted no investigation into Johnson's allegations against him and did not show him Johnson's written complaint; (2) the workforce at the Center was predominately white; and (3) other black employees had been fired for the same reason given in his termination letter: failing to follow instructions.  Plaintiff also contends, without citation to the record, that various factual disputes preclude summary judgment.  Specifically, he claims that he was never told to avoid Johnson or the flats and that the second alleged incident involving Johnson – coming up behind her in a narrow corridor – never occurred.

Under Title VII, it is "an unlawful employment practice for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Because plaintiff has produced no direct evidence of discrimination, it is necessary to consider his claim under "the McDonnell Douglas—Burdine—Hicks burden-shifting analysis." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001).  "Under this analysis, the plaintiff must first establish a prima facie case of discrimination."  Sher v. U.S. Dep't of Veterans Affairs, 488 F.3d 489, 507 n.19 (1st Cir. 2007) (parallel citations omitted).

> After the plaintiff has established this prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas [Corp. v. Green], 411 U.S. [792,] 802 [(1973)].  If the defendant meets this requirement, the burden of production shifts back to the plaintiff, who must offer evidence showing that the defendant's proffered reason is pretext for discrimination. Id. at 804.  While the McDonnell Douglas analysis thus shifts the burden of production, the burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

Sher, 488 F.3d at 507 n.19 (1st Cir. 2007) (parallel citations
omitted).  But, "[o]n summary judgment, the need to order the
presentation of proofs is largely obviated, and a court may often
dispense with strict attention to the burden-shifting framework,
focusing instead on whether the evidence as a whole is sufficient
to make out a jury question as to pretext and discriminatory
animus."  Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31
(1st Cir. 2008) (quoting Fennell v. First Step Designs, Ltd., 83
F.3d 526, 535 (1st Cir. 1996)).  Such an approach is warranted in
this case.

     In comparison with the burden of establishing a prima facie
case, "[t]he pretext analysis . . . is more demanding."  Kosereis
v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (citation
omitted).  To carry his burden of production, plaintiff must
present sufficient evidence to show both that defendant's
articulated reason for terminating him was a pretext and that the
true reason was discriminatory.  See Straughn, 250 F.3d at 34
(quoting Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir.
1999)).  It is important to note that pretext alone is not
enough; "Title VII does not stop [an employer] from [firing] an
employee for any reason – fair or unfair – so long as the
decision to [fire] does not stem from a protected
characteristic."  Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181

F.3d 15, 22 (1st Cir. 1999) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)).  Here, Monday has established neither pretext nor discriminatory animus.

"Pretext can be proven in several different ways."  Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003) (citing Santiago-Ramos, 217 F.3d at 55).  Monday appears to rely on two of them.

One "way of demonstrating pretext is 'by showing that the employer's proffered explanation is unworthy of credence.'"  Che, 342 F.3d at 39 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)); see also Straughn, 250 F.3d at 35 (explaining that burden of persuasion on pretext may be sustained by demonstration that "the proffered 'explanation [was] unworthy of credence' in circumstances where the suspect denial, taken together with other facts, suggests [a discriminatory] motivation") (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

Defendant's explanation for the decision to terminate Monday is not unworthy of credence.  O'Connor's letter to Monday informed him that he was being fired for failing to follow instructions.  The undisputed factual record demonstrates that

even if Carney did not tell Monday to stay out of the flats, as Monday claims, Keane gave Monday the same instruction.  After Keane told him to stay out of the flats, Monday entered the area again.  Thus, the explanation O'Connor gave plaintiff for his termination is entirely credible.  Now, at summary judgment, perhaps in (unwarranted) deference to Monday's unsupported claim that he was never told to stay out of the flats, defendant says Monday was terminated for breaking his promise to stay out of that area.[2]  There is no basis in the record for finding that explanation unworthy of credence.  It is undisputed that Monday told Carney in August that he would stay out of the flats and that he entered the area on October 17.  Plaintiff himself concedes that he was "terminated from his employment based on this singular act of passing through Ms. Johnson's work area."[3]

---

[2] While a Title VII plaintiff may demonstrate pretext by showing that "the employer gave 'different and arguably inconsistent explanations' for taking the adverse employment action,'" McDonough v. City of Quincy, 452 F.3d 8, 18 (1st Cir. 2006) (quoting Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000)), the two explanations here are not so inconsistent as to demonstrate pretext, and both are supported by the undisputed factual record.

[3] He continues by stating that the USPS "cannot defend its action of restricting the movement of the Defendant within a facility that is supposedly non-discriminatory just on an unsupported allegation of a white female employee."  Thus, plaintiff appears to argue that: (1) he was fired for going into the area where Johnson worked; (2) the USPS had no right to restrict his movements in the workplace; and (3) because he is black and Johnson is white, his termination was racially motivated.  Beyond plaintiff's incorrect legal premise, i.e., that he had a constitutional right to unrestricted movement

Therefore, defendant's alternative explanation for Monday's
termination is also entirely credible.  Thus, Monday has not
produced evidence showing that defendant's explanation for his
firing is pretextual because it is not worthy of credence.

   A Title VII plaintiff may also prove pretext "by presenting
evidence of disparate treatment."  Che, 342 F.3d at 39 (citing
Straughn, 250 F.3d at 43-44; Mesnick, 950 F.2d  at 824).
Plaintiff's claim of disparate treatment, such as it is, consists
of unsupported assertions that the workforce at the Center is
predominately white and that other black employees have been
fired for failing to follow instructions.  Even if true, those
assertions do not establish disparate treatment.

   It is fundamental that "[a] claim of disparate
   treatment based on comparative evidence must rest on
   proof that the proposed analogue is similarly situated
   in all material respects."  Perkins v. Brigham &
   Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996).  The
   comparison cases need not be perfect replicas.  See
   Conward [v. Cambridge Sch. Comm.], 171 F.3d [12,] 20
   [(1st Cir. 1999)].  Rather, the test is whether a
   "prudent person, looking objectively at the incidents,
   would think them roughly equivalent and the
   protagonists similarly situated."  Dartmouth Review v.
   Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989).
   Thus, in offering this comparative evidence, Rodríguez
   bears the burden of showing that the individuals with
   whom he seeks to be compared "have been subject to the
   same standards and have engaged in the same conduct
   without such differentiating or mitigating

throughout his workplace, he has produced no evidence of racial
animosity on the part of Carney, Keane, or O'Connor.

11

> circumstances that would distinguish their conduct or
> the employer's treatment of them for it." <u>Mitchell v.
> Toledo Hosp.</u>, 964 F.2d 577, 583 (6th Cir. 1992).

<u>Rodriguez–Cuervos</u>, 181 F.3d at 21 (emphasis added).  Here,
plaintiff offers <u>no</u> analogue, <u>i.e.,</u> no similarly situated white
USPS employee who engaged in the same conduct he did without
being similarly disciplined for it.  Thus, plaintiff has not
produced evidence showing that defendant's explanation for his
firing is pretextual because he was the victim of disparate
treatment.  <u>See</u> <u>Perkins</u>, 78 F.3d at 751 ("the proponent of the
evidence must show that the individuals with whom he seeks to be
compared have 'engaged in the same conduct without such
differentiating or mitigating circumstances that would
distinguish their conduct or the employer's treatment of them for
it'") (quoting <u>Mitchell</u>, 964 F.2d at 582).

    Because plaintiff has failed to produce evidence from which
pretext could be inferred, and has failed to produce any evidence
of discriminatory animus, defendant is entitled to judgment as a
matter of law on plaintiff's Title VII claim.

## Conclusion

    For the reasons given, defendant's motion for summary
judgment (document no. 10) is granted.  The clerk of the court

shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Steven J. McAuliffe
Chief Judge

October 14, 2008

cc:  Jerusalem K. Monday, pro se
     Seth R. Aframe, Esq.